**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

DANA MARIE M.,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        No. 6:21-CV-458
        (GLS/CFH)

─────────────────────────────

**APPEARANCES:**                    **OF COUNSEL:**

Olinsky Law Group                   HOWARD D. OLINSKY, ESQ.
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration      NICOLE BOUDREAU, ESQ.
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Dana Marie M.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for social security income benefits.  See Dkt.

─────────────────────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

No. 1 ("Compl."). Plaintiff moves for reversal and remand for the determination of benefits. See Dkt. No. 12. The Commissioner cross moves for judgment on the pleadings. See Dkt. No. 13. For the following reasons, it is recommended that the Commissioner's decision be affirmed.

## I. Background

On December 18, 2018, plaintiff filed a Title XVI application for social security income benefits. See T. at 48, 180-89, 200.[3] Plaintiff alleged a disability onset date of May 28, 2015. See id. at 180. The Social Security Administration ("SSA") initially denied plaintiff's claim on March 5, 2019, see id. at 87, and again on reconsideration on May 6, 2019. See id. at 101. Plaintiff requested a hearing, see id. at 114, and a hearing was held before Administrative Law Judge ("ALJ") Jeremy G. Eldred on May 22, 2020. See id. at 27-47. The ALJ issued and unfavorable decision on June 8, 2020. See id. at 10-18. The Appeals Council denied plaintiff's request for review on February 18, 2021. See id. at 1-5. Plaintiff timely commenced this action on April 23, 2021. See Compl.

## II. Legal Standards

### A. Standard of Review

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 11. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . .
benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage
in any substantial gainful activity by reason of any medically determinable physical or
mental impairment . . . which has lasted or can be expected to last for a continuous
period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable
impairment is an affliction that is so severe that it renders an individual unable to
continue with his or her previous work or any other employment that may be available to
him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).
Such an impairment must be supported by "medically acceptable clinical and laboratory
diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is
"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]
facts, subjective complaints of pain or disability, and educational background, age, and
work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3
(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.
1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R.
§ 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has

an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since December 18, 2018, the application date.  See T. at 12.  At step two, the ALJ found that plaintiff's "depressive disorder and anxiety disorder" were severe impairments.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of

5

impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 13.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels, except she can understand, remember, and carry out only simple and routine tasks; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and, can appropriately deal with ordinary changes in an unskilled occupation that involves only simple and routine tasks.

Id. at 14.  At step four, the ALJ determined that plaintiff did not have past relevant work. See id. at 17.  At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since December 18, 2018, the date the application was filed[.]"  Id. at 18.

**IV. Discussion**[4]

Plaintiff argues that "the ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of treating medical source Vivienne Taylor, M.D."  Dkt. No. 12 at 8.  Plaintiff contends that the ALJ's explanation for discounting Dr. Taylor's opinion was "wholly inadequate according to the regulations and caselaw."  Id. at 9.  Additionally, plaintiff avers that Dr. Taylor's 2018 opinion "is

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

generally unreadable" and the ALJ, therefore, "had a duty to seek out clarification." Id. at 10-11.

The Commissioner argues that "the ALJ adhered to the regulatory requirements for evaluating such opinion evidence under the rules applicable to claims filed after March 27, 2017, and even if the ALJ could have provided a more robust discussion of the regulatory factors, [p]laintiff cannot show that she was harmed by any error[.]" Dkt. No. 13 at 5. The Commissioner also asserts that Dr. Taylor's 2018 opinion "contains only 'a small percentage of [notations] that are truly illegible' such that remand is not required." Id. at 11 (citing Anzola v. Berryhill, No. 18-CV-11217 (VSB/DCF), 2019 WL 10630956, at *15 (S.D.N.Y. Dec. 20, 2019), report and recommendation adopted, 2020 WL 5646329 (S.D.N.Y. Sept. 21, 2020)). Finally, the Commissioner contends that the ALJ appropriately considered Dr. Taylor's 2020 opinion which was "clearly legible[,]" and compared it to "other record evidence of essentially unremarkable physical findings[.]" Id.

## A.  Relevant Portions of the ALJ's Decision

At step two, the ALJ determined that plaintiff did not establish a severe physical impairment. See T. at 12. The ALJ explained that plaintiff "testified that her diabetes is under control with treatment. This is also documented in the medical evidence. [Plaintiff] has additionally asserted lower back pain." Id. (citing T. at 396). The ALJ noted that "on physical examination, [plaintiff] had no limitations in back or extremity motion. Imaging studies of [plaintiff's] lumbosacral spine were negative. [Plaintiff] has reported that she can walk half a mile before she needs to rest." Id. (citing T. at 213, 218, 342, 345).

Dr. Taylor submitted a 2018 and a 2020 medical opinion.  See T. at 291-92, 411-14.  The 2018 opinion is not entirely readable, and the undersigned will only reiterate the portions that it can confidently discern.[5]  See id. at 291-92.  The opinion notes that because of plaintiff's major depression, anxiety, and low back pain, she is permanently disabled.  See id. at 291.  The opinion indicates that plaintiff is "very limited" in pushing and pulling and "moderately limited" in walking, lifting, and carrying.  Id. at 292.  Dr. Taylor also noted that plaintiff was "very limited" in six out of eight mental functioning categories, and moderately limited in the remaining two categories.  Id.  Dr. Taylor wrote that plaintiff is "[t]otally disabled."  Id.

In Dr. Taylor's 2020 opinion, she noted plaintiff's diagnoses of low back pain with radiculopathy, bipolar disorder, depression, and anxiety.  See T. at 411.  Dr. Taylor indicated that plaintiff's prognosis was "guarded[,]" and her only symptom was "low back pain."  Id.  As for treatment prescribed to plaintiff, Dr. Taylor wrote, "medications – no side effects.  Def[er] to psychiatry."  Id.  Dr. Taylor determined that plaintiff could sit for twenty minutes and stand for fifteen minutes at one time because of her "chronic low back pain."  Id.  Dr. Taylor further noted that plaintiff could sit, stand, or walk for about two hours in an eight-hour day, and she would need a job that allowed for shifting between sitting, standing, and walking.  See id. at 412.  Dr. Taylor determined that plaintiff could rarely lift or carry less than ten pounds and never lift fifty pounds, she could occasionally climb stairs, never climb ladders, and rarely twist, stoop, bend,

---

[5] It is unclear to the undersigned how the ALJ or the parties concluded that the 2018 opinion was written by Dr. Taylor as the Court cannot read the signature.  See T. at 292.  However, neither party disputes that Dr. Taylor is the author.  See Dkt. No. 12 at 9, n.1; Dkt. No. 13 at 5.  Although the form is not readable, the undersigned notes that it is available publicly online.  See Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination, https://otda.ny.gov/policy/directives/2010/INF/10-INF-13-Attachment-1.pdf (last visited June 21, 2022).

crouch, or squat.  See id.  Dr. Taylor indicated that plaintiff could frequently look around, handle, finger, and reach.  See id.  Dr. Taylor noted that plaintiff would need an unscheduled break every hour for twenty-five minutes, she would be off task for more than twenty percent of a workday, and she should avoid "loud noises."  Id. at 413. Finally, Dr. Taylor wrote that "since 2014[,]" plaintiff's "pain has been persistent."  Id. at 414.

The ALJ stated that "[r]eports regarding [plaintiff's] functional limitations from Vivienne Taylor, M.D.[,] are unpersuasive.  Dr. Taylor cites no substantial rationale to support her conclusions, and a review of the objective medical findings from Dr. Taylor's treatment records reveals no significant support for disabling functional limitations."  T. at 17 (citing T. at 291-92, 334-84, 395-97, 411-14).

Also related to plaintiff's physical limitations, the ALJ stated that "[b]ased on the opinions of State agency medical consultants D. Miller, D.O.[,] and V. Baronos, M.D., as well as the medical source statement from consultative examining physician Rita Figueroa, M.D., I conclude that [plaintiff] does not have a 'severe' physical impairment."  T. at 16 (citing T. at 49-62, 64-78, 277-81).  The ALJ determined that the opinions were that "persuasive.  The opinions of the State agency medical consultants are both supported by a detailed narrative rationale, which cites supporting objective medical evidence from the record, while Dr. Figueroa's opinion is well supported by the detailed findings from her physical examination of [plaintiff], which were generally unremarkable."  Id.  Further, the ALJ noted that Dr. Figueroa's examination showed "a normal stance and gait, without the use of assistive devices[,]" plaintiff "was able to walk on her heels and toes, perform a full squat, and rise from a chair without difficulty[,]"

there was "some reduced spine motion," "normal strength and movement in both the upper and lower extremities[,]" and "[n]o sensory deficit, muscle atrophy, or abnormal reflex responses were evident."  Id. (citing T. at 277-78).  The ALJ concluded that "[t]he opinions noted above are also consistent with the record as a whole, which does not support the existence of a 'severe' physical impairment."  Id.

**B.  Analysis**

**1.  Duty to Recontact**

"Courts in this Circuit have often treated a failure to obtain legible notes from a provider – particularly when that provider's notes and opinions are crucial to the case – as a failure to develop the record."  Anzola v. Berryhill, No. 18-CV-11217 (VSB/DCF), 2019 WL 10630956, at *15 (S.D.N.Y. Dec. 20, 2019), report and recommendation adopted, 2020 WL 5646329 (S.D.N.Y. Sept. 21, 2020) (collecting cases); see Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975) ("Where the medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation.").  "[W]here a treating physician's opinion is deemed vague or unclear, 'it is incumbent upon the ALJ to recontact the treating physician for clarification of his or her opinion.'"  Maneri v. Berryhill, No. 2:17-CV-322 (ADS/GRB), 2019 WL 4253972, at *4 (E.D.N.Y. Sept. 9, 2019) (quoting Isernia v. Colvin, No. 14-CV-2528, 2015 WL 5567113, at *10 (E.D.N.Y. Sept. 22, 2015)) (additional citations omitted).  However,

> [t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the records of the record.  Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source.

10

Ismet G. v. Saul, 19-CV-1175 (GTS), 2021 WL 964209, at *6 (N.D.N.Y. Mar. 15, 2021) (citations and quotation marks omitted) (explaining that because "the treatment evidence as a whole (including the treatment notes from [the opinion's author]) does not support the limitations in [the] opinion that the ALJ rejected (including exertional limitations), there was no requirement to recontact [the provider] for further information."); see James B. v. Comm'r of Soc. Sec., No. 1:20-CV-01075 (EAW), 2021 WL 5988411, at *6 (W.D.N.Y. Dec. 16, 2021) ("[T]he ALJ did not reject the opinions . . . for vagueness or contend that the opinions were unclear; rather, he found the opinions unsupported.  Moreover, the lack of treatment notes signed by [the physician] is a reflection on the nature of his treating relationship with [p]laintiff and cannot be credibly seen as an indication that the ALJ believed that there were missing records.  Accordingly, the record contained sufficient evidence, and the ALJ was under no obligation to recontact [p]laintiff's treatment providers or to otherwise further develop the record.").

Here, the record contains Dr. Taylor's 2018 and 2020 opinions and her treatment notes.  Dr. Taylor's treatment notes indicate that plaintiff once reported low back pain with radiculopathy but had a normal examination; she reported anxiety and depression and appeared anxious on examination; she was on three different medications for radiculopathy of the lumbar spine; her chief complaint was back pain after a fall; she was unable to sleep from the resulting pain; and on examination following the fall, she had tenderness of the spine.  See T. at 336-38, 341-42.  During the consultative examination, plaintiff complained that she had had chronic back pain since 2012 after she had two epidurals during childbirth, "[h]er pain is intermittent, rates as an 8 and

described as pressure across the lower back.  The pain travels to both legs to the knees.  She experiences burning sensation in the center spine.  Pain is aggravated by prolonged sitting and standing." Id. at 277.  On examination, plaintiff's "lumbar spine show[ed] flexion 90 degrees, extension 30 degrees, lateral flexion 30 degrees bilaterally, and rotary movement 30 degrees bilaterally." Id. at 279.  Plaintiff's examination was otherwise normal.  See id. at 278-79.  Dr. Figueroa diagnosed plaintiff with chronic low back pain and type two diabetes but determined that "[t]here [we]re no physical limitations based on [the] evaluation." Id. at 280.

As to Dr. Taylor's opinions, both contain significant limitations in plaintiff's physical and mental functioning.  See T. at 292, 411-13.  The 2020 opinion contains more specific functional limitations such as liming plaintiff to walking, sitting, or standing for two hours in an eight-hour day, whereas the 2018 opinion categorizes limitations as "moderately limited" or "very limited." Id. at 292, 412.  The ALJ did not discount the 2018 opinion because of its illegibility but found that both opinions were unsupported by Dr. Taylor's lack of "substantial rationale" and her "treatment records" which did not reflect "disabling functional limitations." Id. at 17; see James B., 2021 WL 5988411, at *6.  Plaintiff does not identify information contained in the 2018 opinion that is not also covered by the 2020 opinion; rather, both opinions contain severe limitation findings. See Dkt. No. 12 at 10-11; see also T. at 292; 411-13.  Although the specific categories listed in the 2018 opinion cannot be deciphered, the check marks being in the very limited and moderately limited categories are clear.  See T. at 292.  As the ALJ had Dr. Taylor's 2020 opinion and treatment notes, the consultative examination, and the state agency consultants' determinations, the ALJ had enough information to compare the

12

severe and "totally disabled" findings in Dr. Taylor's 2018 and 2020 opinions to the benign treatment notes and examinations.  Id.; compare Anzola, 2019 WL 10630956, at *15 (explaining that "only a small percentage of [treatment notes] are truly illegible, that the few entries that are largely illegible still include at least portions that can be deciphered, and that the notes that are readable are highly consistent over the entire period of [the p]laintiff's treatment.  Furthermore, even if those entries, if deciphered, would 'reveal more severe symptoms,' as [the p]laintiff seems to suggest, they would be too few in number to outweigh the import of the substantial majority of [] notes that are legible."); Silva v. Colvin, No. 6:14-CV-06329 MAT, 2015 WL 5306005, at *5 (W.D.N.Y. Sept. 10, 2015) ("[T]he Court is forced to conclude that significant portions of the reports and questionnaires, as well as virtually all of his treatment notes, are illegible . . . .  The Court therefore is unable to determine whether the ALJ's main reason for discounting his opinions-that they are 'inconsistent with his own mental status exams provided in his contemporaneous treatment notes,' is supported by substantial evidence.").

Aside from noting the illegibility of Dr. Taylor's 2018 opinion, plaintiff does not explain how the ALJ lacked sufficient information to determine plaintiff's RFC.  See Dkt. No. 12 at 10-11; cf. Janes v. Colvin, 15-CV-1518 (GTS), 2017 WL 972110, at *3 (N.D.N.Y. Mar. 10, 2017) (citation omitted) ("[T]he ALJ need not seek additional information from a given provider when the record contains notes from the provider that are adequate for the ALJ to determine the claimant's disability.").  Rather, the ALJ had treatment records, the consultative examination, and Dr. Taylor's 2020 opinion to determine plaintiff's RFC.  See T. at 12-17.  Plaintiff's representative also stated that the

record was complete and had no objections during plaintiff's hearing.[6]  See id. at 31.  As

the ALJ had sufficient information to determine plaintiff's RFC, he was not obligated to

contact Dr. Taylor to interpret the 2018 opinion, and the undersigned will proceed to

determining whether the ALJ appropriately considered the opinions and whether

decision was supported by substantial evidence.  Cf. Daniel S. K. v. Comm'r of Soc.

Sec., No. 20-CV-995-A, 2022 WL 1089672, at *7 (W.D.N.Y. Apr. 12, 2022) (rejecting

the plaintiff's argument that the ALJ should have contacted a provider where the ALJ

discounted the provider's opinion "partly because of the lack of explanation" where the

"[p]laintiff does not identify any treatment notes that would provide support for the

limitations contained in [the] opinion.  He also fails to identify any missing records.

Indeed, at the hearing before the ALJ, [the p]laintiff's counsel stated the record was 'up-

to-date,' i.e., the ALJ had all the records before him to make a disability

determination.").

## 2.  Review of Medical Opinions

As an initial matter, plaintiff does not challenge the ALJ's step-two determination

that plaintiff does not have a severe physical impairment.  See generally Dkt. No. 14;

see also T. at 12-13, 16.  Moreover, plaintiff does not make any arguments concerning

the ALJ's mental health determinations or the ALJ's consideration of the supportability

and consistency factors relative to the consultative examiners' and state agency

consultants' opinions.  See generally Dkt. No. 14.  As such, the undersigned will not

advance arguments related thereto.  Cf. Michael H. v. Saul, No. 5:20-CV-417 (MAD),

2021 WL 2358257, at *6, n.2 (N.D.N.Y. June 9, 2021) ("[The p]laintiff does not advance

---

[6] The undersigned also notes that plaintiff did not raise the issue of the 2018 opinion's legibility in her
appeal to the Appeals Council.  See T. at 273-76.

any argument as to why the ALJ was required to explicitly consider the frequency, purpose, extent, and examining relationship between the consultative examiners and himself despite the regulations explicitly stating that the ALJ had no such duty.  The Court declines to advance any arguments on [the p]laintiff's behalf, who is represented by counsel, and will consider this argument waived.").

Plaintiff challenges only the ALJ's RFC determination and consideration of Dr. Taylor's opinions.  See Dkt. No. 14 at 8-11.  In reviewing an opinion, the ALJ is required to "explain how [he or she] considered the supportability and consistency factors . . . ." 20 C.F.R. § 416.920c(b)(2).  "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. § 416.920c(c)(1).  "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. § 416.920c(c)(2).  An ALJ is required to explain his or her consideration of these factors and is not entitled to generally assert that an opinion is "consistent with" or "supported by" the record, without further elaboration.  See Melissa S. v. Comm'r Soc. Sec., No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true."); Kathleen A. v. Comm'r of Soc. Sec. Admin., No. 3:20-CV-1034 (LEK), 2022 WL

673824, at *6 (N.D.N.Y. Mar. 7, 2022) ("[I]t is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision.").

The ALJ's only analysis of Dr. Taylor's opinions consists of a single sentence stating that "Dr. Taylor cites no substantial rationale to support her conclusions, and a review of the objective medical findings from Dr. Taylor's treatment records reveals no significant support for disabling functional limitations."  T. at 17.  The Commissioner asserts that "the ALJ addressed the absence of a supportive narrative and medical evidence for Dr. Taylor's checkbox opinions, and the ALJ's additional discussion of the benign physical examinations, unremarkable objective evidence of record and administrative findings, as well as [p]laintiff's activities, collectively support his determination" concerning Dr. Taylor's opinions.  Dkt. No. 13 at 13.  However, the ALJ did not compare Dr. Taylor's opinions to each other, the consultative examination, the state agency consultants' determinations, or plaintiff's activities of daily living.  See T. at 17.  The Court cannot accept the Commissioner's post hoc rationalizations for the ALJ's "unpersuasive" finding related to Dr. Taylor's opinions.  See Tammie S. v. Comm'r of Soc. Sec., No. 3:20-CV-1021 (ML), 2022 WL 356754, at *7 (N.D.N.Y. Feb. 7, 2022) ("Post hoc explanations do not constitute substantial evidence."); Jackson v. Kijakazi, No. 20-CV-7476 (JLC), 2022 WL 620046, at *18 (S.D.N.Y. Mar. 3, 2022) (citation omitted) ("It is not sufficient to cite to 'some objective medical evidence in the record' and simply conclude that an opinion is 'consistent with other evidence in the file' rendering it 'persuasive.'").

As to supportability, the ALJ noted that Dr. Taylor provided no "substantial rationale to support her conclusions" and cited to Dr. Taylor's treatment records, stating

16

that they "reveal[] no significant support for disabling functional limitations."  T. at 17.

This is sufficient to meet the ALJ's duty to explain whether the opinion is supported by

the record.  See 20 C.F.R. § 416.920c(c)(2).  Moreover, the Court finds no error in the

ALJ's conclusions that Dr. Taylor's treatment records do not support disabling functional

limitations where plaintiff has not identified a single treatment record contradicting that

statement.  See Dkt. No. 12 at 5-6, 9-11.  Dr. Taylor's treatment notes indicate that

plaintiff once reported low back pain with radiculopathy and, following a fall, she

reported back pain and had tenderness of the spine on examination.  See T. at 336,

338, 341-42.  As the ALJ stated, there is nothing in Dr. Taylor's objective treatment

records to support the opinions' severe limitations and plaintiff does not otherwise

identify such evidence.  See T. at 17.

The undersigned notes that aside from Dr. Taylor's treatment notes, there are no

treatment records discussing plaintiff's physical limitations.  The only specific evidence

that plaintiff contends the ALJ did not consider "that is consistent with Dr. Taylor's

[2020] opinion" is Dr. Figueroa's consultative examination findings that plaintiff had a

limited range of motion and was assessed with chronic low back pain and type two

diabetes. Dkt. No. 12 at 10.  The ALJ is required to explain his consideration of the

consistency of an opinion "with the evidence from other medical sources[.]"  20 C.F.R.

§ 416.920c(c)(2).  Objective medical evidence is defined as "medical signs, laboratory

findings, or both[.]"  20 C.F.R. § 416.913(a)(1).  The ALJ did not explicitly explain his

consideration of the consistency of Dr. Taylor's opinions with the reduced range of

motion findings from Dr. Figueroa's examination, and that failure amounts to procedural

error.[7] See Loucks v. Kijakazi, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order) ("[T]he ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record.").

However, if an ALJ commits "procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" the Court "could affirm if a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed." Loucks, 2022 WL 2189293, at *2 (quotation marks omitted) (quoting Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).  The ALJ did not explain whether Dr. Taylor's opinions were consistent with a portion of Dr. Figueroa's examination findings.  See T. at 16-17.  However, in a separate paragraph, the ALJ explicitly stated that "Dr. Figueroa noted some reduced spine motion" and that Dr. Figueroa's and the state agency consultants' determinations that plaintiff had no severe physical impairment were "consistent with the record as a whole[.]"  Id. at 16.  At step two, the ALJ noted that treatment records showed "no limitations in back or extremity motion[,]" plaintiff's imaging studies were "negative[,]" and plaintiff "reported that she can walk half a mile before she needs to rest."  Id. at 12-13 (citing T. at 213, 281, 342, 345). Accordingly, the ALJ's lack of explicit comparison between Dr. Taylor's opinions and Dr. Figueroa's reduced range of motion finding is harmless because the ALJ explained that there is nothing in the record, aside from Dr. Taylor's opinions, which indicates that plaintiff has disabling functional limitations, and the ALJ reviewed the relevant treatment

---

[7] To the extent Dr. Taylor's opinions contain mental health limitations, the ALJ also did not compare the opinions to plaintiff's mental health treatment records from another provider; however, plaintiff does not make an argument regarding the consistency between Dr. Taylor's opinions and the mental health records or other opinions. See T. at 202, 411-13; see Dkt. No. 12 at 8-11.

records and reduced range of motion findings in his decision.  See T. at 16-17; cf.
Loucks, 2022 WL 2189293, at *2 (explaining that the ALJ's procedural error was not
harmless because "the ALJ selectively relied on portions of the record that showed
improvement without even addressing the weight of the evidence supporting the fact
that [the plaintiff] continued to have serious psychiatric symptoms even after years of
treatment and steadily increasing medication.").

Plaintiff contends that the ALJ's failure "to properly evaluate the opinion of Dr.
Taylor is harmful" because in the 2020 opinion, Dr. Taylor opined that plaintiff could sit,
stand, or walk for only two hours in a workday and that she would be off task for more
than twenty percent of a workday.  Dkt. No. 12 at 11.  However, as explained, the ALJ
appropriately discounted the physical limitations because there is nothing in the record
that supports disabling functional limitations and plaintiff does not point to evidence
indicating otherwise.  See id.  As to plaintiff's ability to remain on task, as the ALJ
stated, Dr. Taylor provided no "substantial rationale" in her opinions to support her
conclusions.  T. at 17, 413.  Dr. Taylor does not explain whether plaintiff would be off
task because of her physical and/or mental impairments.  See id. at 413.  There is
nothing in the record correlating plaintiff's low back pain to her ability to remain on task.
Further, as to mental limitations, the ALJ determined that plaintiff had a moderate
limitation in her ability to concentrate, persist, or maintain pace based on plaintiff's
psychological consultative examination.  See id. at 13.  Plaintiff does not challenge this
determination.  See generally Dkt. No. 12.  As such, the undersigned finds that the ALJ
appropriately discounted Dr. Taylor's opinions as the record does not support her
extreme-limitations and permanently disabled conclusions.  Moreover, the ALJ's

determinations are supported by substantial evidence where he relied on the state agency consultants' and consultative examiners' opinions as well as plaintiff's "mental status examination findings[.]"  T. at 16-17; see Baszto v. Astrue, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and nonexamining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); see also Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022) (explaining that the substantial evidence standard is a "very deferential standard of review[.]").  Plaintiff does not challenge the ALJ's reliance on these opinions or the normal mental health examinations.  See generally Dkt. No. 12.  Thus, the undersigned recommends affirming the ALJ's decision.

## V.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.

Dated: June 27, 2022
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge